**BRODSKY SMITH, LLC**
Evan J. Smith (SBN 021271996)
emith@brodskysmith.com
Ryan P. Cardona (SBN 093162013)
rcardona@brodskysmith.com
1310 Kings Highway N.
Cherry Hill, NJ 08034
Tel.:   (856) 795-7250
Fax:   (856) 795-1799

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW KRIEGER,<br><br>    Plaintiff,<br><br>    v.<br><br>ADVAXIS, INC., DAVID SIDRANSKY, JAMES PATTON, SAMIR N. KHLEIF, RICHARD BERMAN, RONI A. APPEL, and KENNETH BERLIN,<br><br>    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Matthew Krieger, by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Advaxis, Inc. ("Advaxis" or the "Company"), Advaxis's Board of Directors (the "Board" or the "Individual Defendants," collectively with Advaxis and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell

the Company to Ayala Pharmaceuticals, Inc. ("Parent") via merger subsidiary Doe Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "Ayala"), and to enjoin an upcoming stockholder vote on an stock and cash proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a October 18, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Ayala will merge with Merger Sub, forming a wholly owned subsidiary of Advaxis. The resulting entity will leave Advaxis shareholders with just 62.5% of the surviving entity, thus diluting their interest

3.      Thereafter, on November 29, 2022, Advaxis filed a Registration Statement on Schedule S4 as amended on December 8, 2022 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, the Registration Statement describes an insufficient process with only one goal in mind – to merge the Company with Ayala.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on November 29, 2022, as amended on December 8, 2022, with

the SEC in an effort to solicit stockholders, including Plaintiff, to vote their Advaxis shares in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Advaxis, provided by Advaxis to the Company's financial advisor Cantor Fitzgerald & Co. ("Cantor Fitzgerald") and Ayala's financial advisor Torreya Capital, LLC ("Torreya"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Cantor Fitzgerald and provided to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8. Plaintiff is a citizen of Connecticut and, at all times relevant hereto, has been an Advaxis shareholder.

9. Defendant Advaxis is a Delaware corporation whose principal executive office is located at 9 Deer Park Drive, Suite K-1, Monmouth Junction, NJ. Advaxis's common stock is publicly traded on OTC Exchange under the symbol "ADXS."

10. Defendant David Sidransky ("Sidransky") has served as director of Company at all relevant times.

11. Defendant James Patton ("Patton") has served as director of Company at all relevant times. In addition, Maxwell also serves as the Company's Chief Executive Officer ("CEO").

12. Defendant Samir N. Khleif ("Khleif") has served as director of Company at all relevant times.

13. Defendant Richard Berman ("Berman") has served as director of Company at all relevant times.

14. Defendant Roni A. Appel ("Appel") has served as director of Company at all relevant times.

15. Defendant Kenneth Berlin ("Berlin") has served as director of Company at all relevant times.

16. The Defendants named in paragraphs 10-16 are referred to herein as "Individual Defendants" or "Director Defendants."

17. Non-Party Parent is a clinical-stage oncology company focused on developing and commercializing small molecule therapeutics for patients suffering from rare tumors and aggressive cancers.

18. Non-Party Merger sub is a subsidiary of parent created solely to complete the Proposed Transaction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The

Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its principle offices within the District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22. Advaxis, Inc., a clinical-stage biotechnology company, focuses on the discovery, development, and commercialization of proprietary Listeria monocytogenes (Lm) technology antigen delivery products in the United States. The company is developing ADXS-PSA, which is in Phase 2 clinical trials for the treatment of metastatic prostate cancer; ADXS-503 that is in Phase 1/2 clinical trials for the treatment of non-small cell lung cancer; and ADXS-504 for the treatment of prostate cancer. It is also conducting clinical studies of Lm Technology immunotherapies in the following areas of disease focused hotspot/off-the-shelf neoantigen-directed therapies; human papilloma virus-associated cancers; and prostate cancer. The company has collaborations and partnerships with Merck & Co., Inc.; OS Therapies, LLC; Aratana Therapeutics Inc.; Biocon Limited; Global BioPharma Inc.; Knight Therapeutics Inc; and others. Advaxis, Inc. was founded in 2002 and is based in Monmouth Junction, New Jersey.

23. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid performance. For example, in a September 12, 2022 press release announcing its 2022 Third Quarter results, the Company highlighted such milestones as preliminary clinical assessment showing that at the first dose level ADXS-504 monotherapy is safe and well tolerated in patients. Further, the Company announced enrollment initiation for second dose level cohort of investigator-sponsored clinical trial of ADXS-504, suggesting promising momentum.

24. Speaking on the positive results, Defendant CEO Berlin commented in the Press Release, "We continue to make progress in our development of ADXS-504. We announced that we have completed the first dose level in our investigator-sponsored trial of ADXS-504 in biochemically recurrent prostate cancer and the data suggest that this novel therapeutic is safe and well-tolerated. In addition, we have initiated enrollment for the second dose cohort and look forward to reporting safety and initial clinical data in the first half of 2023." Mr. Berlin added, "Given the measures we have undertaken to control expenses, we continue to expect that our cash runway will reach into the third fiscal quarter of 2024."

25. The clinical results and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Advaxis. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

26. Nevertheless, the Individual Defendants have caused Advaxis to enter into the Proposed Transaction.

*The Flawed Sales Process*

27. The Registration statement is materially deficient. The Registration Statement fails to disclose proper reasoning as to why the Board agreed to a transaction which yields no

consideration for Company shareholders and dilutes the interests of common shareholders such as plaintiff.

28. The Registration statement fails to disclose whether a committee of disinterested directors was formed to evaluate the Proposed Transaction, and if so, what powers the committee had in doing so.

29. In addition, the Registration Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Ayala, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Registration Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Ayala, throughout the sales process, if any, would fall away.

30. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31. On October 19, 2022, Advaxis and Ayala issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **REHOVOT, Israel and WILMINGTON, Del. and MONMOUTH JUNCTION, N.J., Oct. 19, 2022 (GLOBE NEWSWIRE)** -- Ayala Pharmaceuticals, Inc. (Nasdaq: AYLA) (Ayala), a clinical-stage oncology company focused on developing and commercializing small molecule therapeutics for patients suffering from rare tumors and aggressive cancers and Advaxis, Inc. (OTCQX: ADXS) (Advaxis), a biotechnology company devoted to the discovery, development and commercialization of immunotherapies based on a technology which uses engineered Listeria monocytogenes, today announced that they have entered into a definitive merger agreement. The merger would result in a combined company that will focus predominantly on the development and commercialization of Ayala's lead program AL102 for the treatment of desmoid tumors and Advaxis's candidate ADXS-504 in development for prostate cancer.

Kenneth A. Berlin, President and Chief Executive Officer of Advaxis, said, "Advaxis took a thorough approach in our quest to find the right partner with the right products. This merger is expected to enhance Advaxis's portfolio of clinical assets, with Ayala's proprietary gamma secretase inhibitors that are being developed as targeted therapies for rare and aggressive tumors. Ayala's lead candidate, AL102, is currently being investigated in the Phase 2/3 RINGSIDE study in desmoid tumors, which we believe will accelerate the stage of product development for the combined company dramatically. We are particularly excited about very promising interim data from RINGSIDE, which showed that AL102 monotherapy had meaningful anti-tumor activity with tumor shrinkage in the majority of patients that appeared to be deepening over time. The combined management team has extensive commercial and R&D experience, and we believe we have the cash to advance the combined portfolio through key milestones in 2023, including longer-term data from Part A of RINGSIDE, clarity on the registration path for AL101 in recurrent/metastatic adenoid cystic carcinoma (ACC) and initial clinical and PSA data from the Phase 1 trial of ADXS-504 in prostate cancer. We believe that this transaction will also help drive our efforts to return to a Nasdaq listing and enhance our ability to access capital."

Roni Mamluk, Ph.D., President and Chief Executive Officer of Ayala commented, "We are pleased to announce the proposed merger with Advaxis, which is expected to provide our pipeline and AL102 with additional financial resources as well as additional infrastructure in the U.S. The two companies have a shared mission to develop innovative therapies to improve the lives of patients with cancer and I believe we have found a good partner to advance our pipeline and create value for our stakeholders."

*Potential Conflicts of Interest*

32. The breakdown of the benefits of the deal indicates that Advaxis insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Advaxis.

33. For instance, it appears that Defendant Sidransky is a member of the Board of Directors of both Advaxis and Ayala, and will be able to convert his shares of Ayala into increased holdings in the Company.

34. Thus, while the Proposed Transaction is not in the best interests of Advaxis,

Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

35. On November 29, 2022, and as amended on December 8, 2022, the Advaxis Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

36. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

   a. Adequate information as to why the board agreed to a transaction which will dilute the interests of common shareholders;

   b. Adequate disclosure as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction and if do, what powers the committee had in doing so;

   c. Whether the terms of any confidentiality agreements entered during the sales process between Advaxis on the one hand, and any other third party (including Ayala), if any, on the other hand, differed from one another, and if so, in what way;

    d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Ayala) throughout the sales process, if any, would fall away; and

    e.  The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Advaxis' and Ayala's Financial Projections*

37.    The Registration Statement fails to provide material information concerning financial projections for Advaxis provided by Advaxis management and relied upon by Cantor Fitzgerald in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

38.    Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Cantor Fitzgerald notes that it reviewed, internal data regarding the Company's operations and financial outlook.

39.    The Registration Statement, therefore, should have, but fails to provide, certain information in the projections that Advaxis management provided to the Board and Cantor Fitzgerald. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

40. With regard to *Ayala Projections Adjusted by Advaxis Management*, the Registration Statement fails to disclose material line items for all projection metrics utilized in Cantor Fitzgerald analyses:

    a. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: revenues, cost of goods sold, and operating expenses; and

    b. Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; tax expense, depreciation and amortization, and increases in net working capital.

41. With regard to *Summary of the Ayala Projections* prepared by Ayala management, the Registration Statement fails to disclose material line items for all projection metrics utilized in Cantor Fitzgerald analyses:

    c. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: revenues, cost of goods sold, and operating expenses; and

    d. Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; tax expense, depreciation and amortization, and increases in net working capital.

42. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

43. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

44. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Cantor Fitzgerald's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cantor Fitzgerald*

45. In the Registration Statement, Cantor Fitzgerald describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

46. With respect to the *Advaxis Implied Equity Value Per Share* analysis, the Registration Statement fails to disclose the following:

   a. The inputs metrics and assumptions used to determine a discount rates of 4.3% and 9.8%; and

   b. The equity risk premium utilized.

47. With respect to the *Selected Companies Analysis*, the Registration Statement fails to disclose the following:

  a. The Company's net cash;

  b. The inputs, metrics, and assumptions used to determine a reference range of 2026E revenue multiples of 2.0x to 11.2x; and

  c. The number of fully diluted outstanding shares of Company common stock.

48. With respect to the *Discounted Cash Flow Analysis* for Ayala, the Registration Statement fails to disclose the following:

  a. The specific inputs and assumptions used to determine a discount rates ranging from 13.5% to 16.5%;

  b. Ayala's weighted average cost of capital;

  c. The inputs, metrics and assumptions used to determine a perpetuity growth rate range of negative 40% to negative 20%

  d. Ayala's net cash;

  e. Ayala's net debt; and

  f. The value of federal and state net operating losses for tax purposes.

49. With respect to the *Discounted Cash Flow Analysis* for the combined company, the Registration Statement fails to disclose the following:

  a. The specific inputs and assumptions used to determine a discount rates ranging from 13.5% to 16.5%;

  b. The Pro Forma Company's weighted average cost of capital;

  c. The inputs, metrics and assumptions used to determine a perpetuity growth rate range of negative 40% to negative 20%

  d. The Pro Forma Company's net cash;

  e. The Pro Forma Company's projected net debt; and

    f. The value of federal and state net operating losses for tax purposes.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

51. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Advaxis stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Torreya*

52. In the Registration Statement, Torreya describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a. The inputs metrics and assumptions used to determine a discount rate of 20% for the current share price of Ayala common stock; and

    b. The inputs metrics and assumptions used to determine a discount rate of 12% for fiscal years ending December 31, 2023, through 2033.

54. With respect to the *Advaxis Cash Forecast*, the Registration Statement fails to disclose the following:

   a. The projected amount of uncommitted cash as of anticipated date deal closing; and

   b. The value of operating losses by Advaxis.

55. With respect to the *Comparable Transactions Analysis*, the Registration Statement fails to disclose the following:

   a. The date on which each transaction compared closed; and

   b. The value of each transaction compared.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Advaxis stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein

59. Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

60. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

61. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

16

the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

65. The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

68. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Advaxis's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Advaxis within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Advaxis to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Advaxis and all of its employees. As alleged above, Advaxis is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 12, 2022        **BRODSKY & SMITH**

By: */s/ Evan J. Smith*_____
Evan J. Smith (SBN 021271996)
emith@brodskysmith.com
Ryan P. Cardona (SBN 093162013)
rcardona@brodskysmith.com
1310 Kings Highway N.
Cherry Hill, NJ 08034
Tel.:   (856) 795-7250
Fax:   (856) 795-1799

*Counsel for Plaintiff*